for the second district is now open. The Honorable Justice Robert D. McLaren presiding, along with Justice Catherine E. Zinoff and Justice Donald C. Hudson. The case is number 219-0808. Anne Davis, Plaintiff Appellant, versus Kevin A. Schenk et al., Defendants Appellees. Arguing for the Appellant, Stephen M. Schievar. Arguing for Appellee Kevin A. Schenk as Trustee, Elizabeth McKillop. Arguing for the Appellees, Kevin A. Schenk individually, Timothy Schenk, Carolyn Schenk, and Dawn Schenk, Jennifer Schwartz. Thank you. Mr. Schievar, you may proceed. Thank you, Your Honor. May it please the Court, Your Honors, the Schenk defendants have raised a jurisdictional issue, which we addressed actually both preemptively in our opening brief and in more detail in our reply. Does the Court want me to address that? I don't know that it's necessary for me. If you wish to make a short argument, that's fine. Otherwise, you can proceed to what you think is that which has the greatest priority as far as you're concerned. Okay. Thank you, Your Honor. I will be very, very brief on that issue just to say that it's really beyond fair argument that the August 15th, 2019 order leaves nothing further to be done in order to execute on that as a judgment, particularly paragraph four in that order explicitly authorized the trustee to make distributions from the trust following the trustee's submitted plan of distribution and following the terms of that In my view, no room for argument that that is a final judgment. Rather, yes, an appealable judgment left nothing further to do. So, Your Honor, this appeal concerns the post-judgment determinations of the trial judge. First, to include $750,000 of inter vivos transfers from the Eilat Trust as distributions that had to be equalized by giving equal amounts to the other two beneficiaries, Kevin and Timothy Sheck. Now, the court did this and the significance there is that they were inter vivos. They were transfers that were made to a plaintiff appellant in 2006 and 2007 before Mrs. Sheck died. The significance of that is, as the trial judge herself recognized, only distributions that followed Mrs. Sheck's death were relevant to this equalization formula. In other words, these inter vivos distributions should not have been attributed to Ann for purposes of deciding how much she received and then in turn equalizing by requiring that to be deducted from her beneficiary's share. So, we think that was an error and for all the reasons we set forth in our two briefs, the trial court herself was very, very clear that the key date for determining plaintiff's share that she received that was relevant was post Mrs. Sheck's death. Now, the second issue on appeal is the award of $256,482.67 in attorney's fees to Kevin and Timothy, which was required to be taken according to the order from plaintiff's share of the proceeds of the Eilat. These two decisions left plaintiff with nothing, with zero distributions from an Eilat holding approximately $6 million that was supposed to be shared among the beneficiaries and their respective families. Now, this is the second appeal arising from this matter and if it seems like you have heard many of these arguments before you have, we should not be before you re-arguing the merits of the judgment that this court has already reviewed, having declared it a final and appealable judgment back on February 13th, 2019 when the original appeal was decided. There's no reason and the Sheck defendants have given the court none for the court to deviate from the policy against piecemeal appeals, which is reflected in both statutory and extensive case law and that required the defendants to timely file their petition for attorney's fees. What does timely mean? Timely means so that it could be heard in a singular appeal of merits. Further, as I'll talk about a little further, the Supreme Court has said what timely means with respect to the trial court retaining jurisdiction over an appellate petition for attorney's fees. Now, just for some quick background, your honors will recall the merits of this case involved the declaratory judgment that was entered on January 22nd of 2018. Trial court decided on that date that defendants photocopied Eilat, which they called the Oklahoma Eilat, was the operative trust in between two competing Eilats. If the plaintiff's case was indeed groundless, vexatious, or brought for an improper purpose and therefore warranted the imposition of attorney's fees, the full extent of that asserted groundlessness was known to the defendants at that time. Make no mistake about it, the vast majority of the fees claimed in defendant's petition arise from the trial and appeal of the declaratory judgment action. As we set forth in our briefs, all but $22,132 of the $256,482.67 relate to the alleged groundlessness of the declaratory judgment case, including the appeal. That $22,132 relates to the Sheck defendant's claims as discovery sanctions in the second phase. That's the accounting phase, not the declaratory judgment phase. So to be clear, plaintiff does not contest or appeal that portion, that $22,000 sanctions award. I'm going to skip some things given the timing here. You know, the Sheck defendants have never offered any reason or justification for waiting nearly 18 months until June 11th of 2019, 18 months from the date of the final judgment to which it related to file their petition. The petition was not even timely by any imaginable standard with respect to their appellate attorney's fees. They inexplicably waited an additional four months after the first appeal was decided to file their petition. The mere fact that unbeknownst to them at the time, they would be asserting further claims for attorney's fees based on discovery sanction in a post-judgment proceeding is obviously not a justification either legally or logically. The Sheck defendants make several arguments that attempt to tie, they attempt to bootstrap their attorney's fees to the post-judgment proceedings. And they have no logic or merit to them at all. The fact that any attorney's fees, if they awarded, were to be assessed against a portion of the trust, that's no barrier for them making the claim for those fees in the first instance. And their claim that their attorney's fees claim required the existence of a trust fund from which the fees can be paid, that defeats itself because the trust fund from which the attorney's fees would be distributed existed as of 2009 at the latest when Mrs. Sheck died. It was actually set up six years before that. Critically, unable to establish any affirmative basis for the very late fee petition, the Sheck defendants attempt to distinguish the cases that we use that make clear that whether the fee petition is assessed against trust proceeds or directly against the party, it must be made in a timely manner. And here's the key, what is timely? As the Illinois Supreme Court stated in Illinois Department of Finance and Professional Regulation versus Rodriguez, that's cited in our reply at 11, that time window is while the trial court still has jurisdiction over the issue, not over the person as the Sheck defendants contend. We explain the facts of Rodriguez, but here's the key holding, citing the Hurley case, which the defendants, by the way, tried to distinguish by saying in Hurley, the party was dismissed out of the case, which is why that was untimely. And then in our case, because the Sheck defendants are still in the case, Hurley doesn't apply. Incorrect. The Supreme Court in Rodriguez said, Hurley stands for the general proposition that fee requests must be made while the court maintains jurisdiction. In sum, we hold that the court retained authority to award fees only while it maintained jurisdiction over the underlying issue. Couldn't be clearer. What we're talking about here is the declaratory judgment is the source, that action is the source and the issues as to which plaintiffs, the Sheck defendants claim that they are entitled to attorney's fees. Now, we do review the merits in our brief, but it's interesting to note that so many pages of the merits of the case, and that alone seems to belie the claim that our claims lack merit. And we do go into detail and cite extensively trial transcript as to just why, in fact, this is not a meritless, groundless case. In fact, many of the issues were heavily contested and more issues were lingering after trial than perhaps were even known before trial. And the trial judge acknowledged this in her ruling that's in the record at 811 in our appendix at 387. I believe I'm going to just summarize and say that we should not be here re-arguing the merits of whether the declaratory judgment action and the appeal therefrom were meritorious. The Illinois policies that limit the time for attorney's fees to be asserted are clearly based on policy so that they can be heard with the merits, so that we're not in the very position we're in now. And the Supreme Court has also made clear that jurisdiction has clearly, that window has clearly passed because the issue is over. The issue ended on January 22nd. And even if you want to claim that the appeal wasn't decided until February, that had long expired too. And there's no basis to file a fee petition four months after even the appeal was decided. Thank you, Your Honor. Thank you. Justice Hudson, do you have any questions? This is Justice Zinoff. I have questions. He may be on mute still. Can you hear me? Which one of us do you want to go ahead? Bob? Hudson, if he's available. Can you hear me now? Yes, we can hear you now. All right. All right. I did have a question, first of all, about the contention of the trial court error in approving the trustee's calculation and final plan. I'd like to ask Appellant's Counsel how he responds to the argument that the appellant failed to preserve the issue and the calculation because she failed to timely object to the calculation of the trial court. Specifically, when the order was entered, Anne was given until July 15th, about a month later, to file a response. And the case was continued until August for hearing. Anne never filed a written response. And then it wasn't until the matter was argued that she raised the of the improper calculations until after the trial court made the ruling. So how is it that she did not arguably forfeit that issue? Well, Your Honor, at the August 18th hearing, I was asserting reasons why I was not in a position to file a written response yet. We had been asking for a deposition of the trustee. We had been hoping to get more facts to discuss the accounting issues and to form a basis for me to respond. So it wasn't that I waived the issue. We asked for further time. We asked that the discovery be extended. So that's one point. It was clear that I wasn't just saying we have no response and we make no objection. My argument, and it's clear from the transcript, was that we're not in a position yet. We haven't done discovery. I even cited some deficiencies that were outstanding. I hadn't had a certification of completeness from the trustee yet. So I was looking for more time. In addition, I did put on the record, because I saw what was happening, I saw that we were being foreclosed, much to my chagrin and surprise that we were proceeding right to a final judgment at that point, a final ruling, I did put in the record for the very purpose of preserving this issue. So I don't think there's merit to the trustee's claim that the fact that the judge ruled sort of without warning and said, okay, and this is my ruling, you know, first, before I said, but wait, I have to, you know, I have issues with this ruling. I don't think that it's that. Sorry. The appellant was given until July 15th to file a response. According to the record, the case was continued until August 15th for hearing. At that point, there was no response. Is that correct? That is correct, Your Honor. So you raised the issue of requesting additional discovery after the matter came back. You waited until the court was in the process of ruling when you made that request, correct? It's true. There was no written response, and that is when I made the request. That is true. Let me ask you a question about the finality of the judgment. You were claiming, or at least contending, that the judgment was not final, or was final after the motion for directed finding was granted. Is that correct? Well, are we going back to the original judgment and the declaratory judgment action, which was 2018 on January 22nd? Well, you raised the issue, did you not, that the petition, the petition had to be brought within 30 days of the entry of the final judgment, correct? That is correct, yes. And you're saying that the directed finding was the triggering date, correct? Correct. However, was that the triggering date? Wasn't the final order, wasn't the matter continued by the court specifically for other matters to be resolved? How do you respond to the fact that just the granting of the motion was not the final order? I respond by saying this court, the appellate court, specifically found in their opinion that the declaratory judgment constituted a final appealable order. And that's the law. A declaratory judgment, regardless of whether there are subsequent proceedings in the nature of accountings, is distinctly in and of itself a final judgment. And I do reiterate that in its February 13th, 2019 ruling, the appellate court specifically said that this declaratory judgment order on January 22nd, 2018, was a final appealable judgment. So that's my basis. All right, that's all I have. Thank you. Thank you. Justice Zenoff, do you have any questions? Yes. Wasn't your notice of appeal premature as, if indeed, with respect certainly to the accounting, the final and appealable order was entered on October 15th and not August 15th? Wasn't it premature? No, Your Honor, it wasn't. And let me also address the fact that an order says it is a final appealable order. As we know, that verbiage is not what determines what is a final appealable order. And the fact also that the August 15th order does not say that, conversely, does not mean it's not a final appealable order. And the test, as I've articulated in the brief, the test for determining whether there is, whether an order is final and appealable is whether or not it leaves anything further to be done before execution of the judgment that's articulated. And page two of my reply brief, paragraph four of the order says, quote, the trustee, and this is based on this order, August 15th order, the trustee is authorized to make distributions from the Patricia Sheck Irrevocable Trust pursuant to the trustee's final plan of distribution and this order. That is the green light for them to begin executing the judgment because making distributions is the execution of the judgment. So, and there's no question in my mind, I mean, it's final for, we also argue a number of other reasons why it's provisioned under 304B, 304B1, which says judgment ordered in an administration of an estate or guardianship. And there's case law that says rulings like this with regard to a trust administration are final and appealable and must be appealed, in fact, must be appealed within 30 days. So, as I stated in my brief, you can rest assured if I had not filed my notice of appeal within 30 days of the August 15th order, I would be facing the argument that my appeal was out of time. So, that's. Right. And so, you're saying that the October order was ministerial, is that the declaratory judgment action was groundless as early as January 2018 before the trial began? And because Patricia's attorney had testified that she had presented a signed and notarized version of the election and to her new attorney. So, wouldn't she have known which version was the true version? You're asking whether the plaintiff, the appellant here should have known that. Right. Well, no, no, absolutely. That going ahead with the declaratory judgment action really was groundless because of the piece of that was gained prior to the trial beginning. Absolutely not, Your Honor, for several reasons. The actual, and this is for all the reasons, by the way, these are merits reasons why we say that the photocopied eyelet that defendants are offering as the final effective eyelet is not, should not be deemed the valid eyelet. It's because there are these many unexplained differences between what we know to be based on the evidence at trial, what we know to be the eyelet document that was, in fact, created by Huck Boma. And it's very different. And we go through all the differences. And there are, you know, typeface differences. There are differences in formatting. There are differences in, you know, spacing between words. They're two different documents. So at most, one might be able to say that the plaintiff had an idea that the only trust she would have had an idea of was the actual Huck Boma trust. And that's not the trust that defendants have presented. They have presented as valid this third version, which has draft stamped on it, which is different in many physical characteristics than the Huck Boma eyelet. And beyond that, Mrs. Davis believed that the Bierman eyelet was valid. She had no basis to know that any other eyelet had ever been signed. It hadn't been found. And in fact, as of the trial date, no one at Huck Boma was able to find a signed eyelet. The mystery surrounding where this document that defendants are relying on came from exists as of this day. So we make very clear that there's no way that the plaintiff could have known. And she still contends it's not valid. There's no way that she would have known it was valid at the time. And we still don't believe it's valid. Okay. One other question going back to the issue of timely filing of the petition for fees. You explained that you believe that they had to be filed while the trial court still had jurisdiction. But is that jurisdiction just limited to the declaratory judgment action? I mean, there were, as we know, there was a petition filed for approval of the final accounting over which the trial court still had jurisdiction. These fee petitions were filed on June 11th before this final order was entered on the petition for final approval. Why, given that, weren't these fee petitions timely filed? Because they could have and should have been filed within sufficient time so that they could be appealed with the merits. And that is the law in Illinois. That's why there are these cases that make clear that there's 30 days from the date of the entry of the final judgment to which those attorney's fees relate. In other words, and that's what the Supreme Court is saying in Rodriguez, jurisdiction over the issues raised in the declaratory judgment action, as opposed to the accounting, which is a separate proceeding, those are the issues, those are the issues to which these attorney's fees that we are contesting as late apply. They don't apply to the extent they are seeking attorney's fees that relate to the post-judgment proceeding and the accounting. We don't contest them. There's about $22,000 of those. We don't contest those. And so, yes, for the reason I stated, the very important policy reason of avoiding piecemeal appeals, yes, while the trial court had jurisdiction over the issue of the declaratory judgment and which trust was valid 30 days from the date of that final judgment is when the fee petition had to be filed. The fact that we went on to do an accounting phase did not resurrect jurisdiction over that fee petition. Thank you. I don't have any further questions. Thank you. Counsel, your argument relates to what may be deemed a double entendre or a mislabeling or a misconception about what is final and appealable and what is actually a final judgment, which I have in my own strange way called a final final judgment. And a final and appealable judgment is a judgment that is final as to a party or several parties, but not as to all parties and as to all issues. However, because of Rule 304 and other interlocutory rules relating to appeals, they are deemed to be final and appealable, but they aren't a final final judgment, which is embodied in the order that was entered when the estate was closed. And your arguments are arguing about final and appealable, such as under 304A, which I believe declaratory judgments are included somewhere in 304A or B. And a final final judgment. And so, could you tell me how I am misunderstanding your position? Because it seems to me that you are conflating the two. I think I need to sort out, based on your question, the two different judgments that we're talking about here. The declaratory judgment, which was entered on January 22nd of 2018, was a final judgment and it was appealable. And I guess, is your Honor's question whether that judgment started the clock ticking because it was a final final? How is that judgment a final final judgment to the extent that levy and execution could issue and supplementary proceedings could issue? Well, clearly, the supplementary proceedings were going to issue, which was to determine how to distribute the assets in the funds that were held in the trust. So, it was final in the And once you know that, it's all, everything that needs to be done is a matter of, you know, mostly a matter of just executing the formula and distributing the assets. So, you're telling me that once there was a declaratory judgment indicating which trust to then why are you appealing the apportionment that you claim was in error and you claimed you needed more discovery in order to determine whether or not this should be interpreted in a different way from that which Judge Wheaton determined? Well, I guess, no, clearly, I'm not going to be able to rewrite history. Yes, there were issues that we did, in fact, need to resolve. I guess I'm not clear on the question because My point is, you just, I thought you just said that once the declaratory judgment was determined as to which trust took priority or had legal effect that everything else just fell into place and that when one domino fell, all the other dominoes would fall in procession. And that isn't what happened here, according to the record, because the domino relative to what the apportionment was didn't fall. It stood up and there was a hearing and you didn't file a reply and you made arguments that it's not justiciable yet. It's not right yet because I haven't had discovery. Well, why do you need discovery if the domino is supposed to fall based upon your claim that this just is, it follows like any other syllogism does where all the premises are proper? I think I should probably re-couch my answer. The declaratory judgment on January 22nd, 2018 terminated the issues sufficiently by that time. There were no further issues that were needed to be resolved for defendants to assert their claim, to know the nature of their claim, i.e. that we brought a groundless declaratory judgment lawsuit. And as far as I understand, that is what the courts are saying when that final judgment is where the 30-day clock must begin for them to file their petition as it relates to the merits or groundlessness of that action. I don't dispute that there was a second phase to be, a second phase of the proceedings that to have the details of how the distribution was going to look. I don't dispute that. And yes, there were. But that is a distinct second phase. And my understanding is that because a declaratory judgment is final and is appealable, that is the test for when the time clock runs to is so we don't have a court, an appellate court review the merits once and then review it a second time to see if it was frivolous or not. So final and appealable in that sense do go together. And there's no question that the declaratory judgment was final and appealable. And this court, as I said, found so itself. So my position is that was sufficient to start the 30-day time clock not only under the case law and the statutes, but the policy that those cases articulate and underscore, which is, again, at the time of the appeal on the merits of the declaratory judgment, that's when the attorney's fees on the meritlessness or supposed groundlessness needed to be heard. Thank you. I have no further questions. Catherine, Donald, do you have any Thank you, Your Honor. Thank you. Ms. McKillop, you may proceed. Thank you. May it please the court, my name is Elizabeth McKillop and I represent Kevin Scheck as trustee of the Patricia Scheck Irrevocable Life Insurance Trust. As a reminder, I will speak for approximately three minutes regarding the trial court's approval of the trustee's proposed plan of distribution, but then I'll yield the remainder of the time to Ms. Schwartz. Plaintiff only raises one argument this morning, that the approval of the proposed calculation was inconsistent with a comment the trial court had made during an earlier phase of this litigation. Plaintiff did not raise this issue at all before the trial court and plaintiff's appellate briefs provide no legal support for this position. Therefore, I believe the argument is waived. Regardless of waiver, though, plaintiff's argument fails. The trial court's earlier comment came after it ruled on the issue of which of two trusts owned a life insurance policy. At the time of this comment, no evidence, argument, or analysis had been presented regarding the appropriate calculation of distribution of trust assets before the trial court's earlier comment was not a binding ruling on an issue presently before the court. The appellant's briefs also raise a second argument, that the approval of the proposed calculation was contrary to the terms of the ILS. This argument is also waived. Again, plaintiff fails to cite any controlling authority or case law, and plaintiff's argument was not properly raised at the trial court. As discussed this morning, plaintiff did not file a written response to the trustee's petition, nor did she raise this argument during her time for oral argument. It was only after the trial court had ruled on the trustee's petition that the plaintiff raised this particular argument for the first time. Again, regardless of waiver, this argument also fails. In approving the trustee's proposed calculation, the trial court properly looked to Article III of the ILS. Article III instructs the trustee as to when and how to distribute the assets of the ILS. The introductory language of Article III directs the when, which is as of Patricia Schacht's death. Article III goes on to instruct how to calculate that distribution, and the trustee is required to equalize the value which is distributed to her children from the 1996 trust. There is no language in Article III of the ILS that restricts this calculation to distributions from the 1996 trust that occur only after Patricia Schacht's death. Further, it is clear from the terms of the ILS and its specific use of the equalization language that the grantor intended to treat her children equally as between the 1996 trust and the ILS. The trustee can only achieve the grantor's goal of equalization by considering the total value of assets received by her children from the 1996 trust without limitation to post-death or pre-death distribution. Plaintiff's interpretation is not supported by the plain language of the trust, and the trial court properly approved the trustee's proposed calculation. Therefore, I ask that the trial court's ruling be affirmed, and I yield the remainder of my time to Ms. Schwartz. Thank you. Justice Hutchins, do you have any questions you'd like to ask? I do not have any questions of Ms. McKillop. Thank you. Thank you. Justice Enoff, do you have any questions? No, I do not. Thank you. Neither do I. Thank you. Thank you. Counsel, you may proceed. Thank you. May it please the Court, I'm Jen Schwartz, and I represent the Appalachian Individual Schacht Defendant, and I will be addressing the issue of the circuit court's of attorney fees. Before addressing that issue, as has already been noted, we do challenge that appellate jurisdiction exists over this appeal, and I'm happy to address any questions the Court may have on appellate jurisdiction, but I am going to focus my time to the arguments raised on plaintiff's appeal. Plaintiff's challenges to the circuit court's fee award fail for two main reasons. First, our fee petition was filed before the litigation terminated, while the circuit court indisputably had jurisdiction over the issue of how the trust proceeds should be distributed. And then second, the circuit court's fee award was supported by the record, including this court's affirmance of the declaratory judgment, and does not rise to the high level of an abuse of discretion. Plaintiff made an argument on appeal as the Schacht Defendant filed their fee petition too late, and as a result, the circuit court lacked jurisdiction to award a certain portion of the fees. But as Mr. Shabar has already admitted, they don't contest the circuit court had jurisdiction over a portion of the fee award to the extent it awarded fees related to discovery. Now, there is no dispute that the fee petition was filed before a final judgment was entered on October 15, 2019. There's no dispute that when the fee petition was filed, the circuit court had jurisdiction over all the parties, had jurisdiction over issues related to how the trust proceeds should be distributed, or had jurisdiction over the issue of attorney fees petitions generally. Now, plaintiff contests, even though she admits that the circuit court had jurisdiction over a portion of the fee award, claims that the circuit court lacked authority to award fees related to the declaratory judgment trial and appeal because we had to file a petition within 30 days of the declaratory judgment or appeal. But that argument continues to ignore the procedural posture of this case, as well as the factual basis for a petition. Mr. Shabar keeps referring to this case as pre-judgment and the post-judgment proceedings. He's even referred to those proceedings after the declaratory judgment as supplemental proceedings. Those weren't supplemental proceedings. This case involves multiple claims, and when the case was ready for trial, the parties agreed, they stipulated, to bifurcate the case into two phases. The first phase would only resolve the declaratory judgment claim and resolve the issue of which Islet controlled. The second phase would address the remaining issues that were raised in the original pleadings, and all those issues would be reserved for the second phase of the trial. The fee petition was properly filed during the second phase of the trial because it sought fees under Patterson, and an award of fees under Patterson is contingent on the existence of having an award of fees to which those, excuse me, a share of the trust proceeds to which the attorney's fees can be assessed. Now, it's true that the trust funds existed before that date, but until the second phase of the case, it was completely unknown whether plaintiffs would be entitled to a share of the trust proceeds because of the equalization provision in the Hust-Bulma Islet. We did not know and could not have known what or the extent of plaintiff's share of the trustee was allowed to take discovery on that issue during the second phase and filed his petition for distribution in June of 2019. We filed our fee petition five days later. Further, as a factual matter, our fee petition was not based solely on plaintiff's conduct during the declaratory judgment trial, but was based on the totality of her conduct throughout this case from January 2018 through the date of our fee petition. And as the circuit court recognized, fees were particularly warranted in this case because plaintiff's conduct, unreasonable and abusive conduct, was not an isolated event, but occurred repeatedly over a protracted period of time and through multiple phases of this case. The fee petition was properly filed during the second phase of the case and the circuit court correctly exercised jurisdiction. Plaintiff's second argument on appeal raises a very narrow attack to the merits of the circuit court's fee award. She claims that the fee award should be reversed to the extent fees rewarded, to the extent the fees incurred during the declaratory, excuse me, that the fees award should be reversed to the extent that awarded fees incurred during the declaratory judgment trial because her claim that the Beardman Islet controls could have arguably prevailed. Any other challenges plaintiff has to the merits have been waived for failing to meaningfully address them below or on appeal. As detailed in our brief, plaintiff's declaratory judgment claim did not have a reasonable basis in fact and substantial undisputed evidence to disprove that claim. The circuit court presided over this case for 10 years. That as fact finder during the bench trial was intimately familiar with the issues involved, the evidence, the quote-unquote evidence plaintiff relied on to support her claims and personally witnessed plaintiff and her counsel throughout this litigation. It was in the best position to determine whether fees should be assessed. The record supports the circuit court's decision including this court's order affirming the declaratory judgment and plaintiff certainly has not shown that there's been an abuse of that discretion. In conclusion, we'd ask that this court dismiss the appeal for lack of jurisdiction or if jurisdiction exists affirm the circuit court's August 15, 2019 order in all respects and I'd invite any questions the court may have at this time. Thank you. Justice Hudson, do you have any questions? I do not have any questions of Ms. Schwartz. Thank you. Justice Zinov, do you have any questions? Yes, I do. The August 15th order left really nothing substantive or substantial to be done, isn't that correct? I mean the only thing that was done in October was a ministerial act so why wasn't this August 15th order a final judgment? Well, I would disagree that the accounting that was left was a ministerial act. The accounting was one of the three substantive claims in plaintiff's complaint and the August 15th order did not fix the party's rights with respect to that accounting claim. Plaintiff was entitled to still litigate that claim and prosecute that claim after the August 15th order. She simply chose not to do so but the fact that she didn't do so doesn't make that accounting claim ministerial or incidental to the judgment of the August 15th order and so for that reason we believe that there's no jurisdiction under Rule 301. All right and wouldn't there, couldn't there also be jurisdiction found under 304b1 an order determining the rights of the parties to trust assets? Couldn't that August 15th order come under that or the October order under that section? Rule 304b1 should not apply to the August 15th order. I believe, you know, Rule 3, that rule applies to certain interlocutory orders entered in a state or similar proceedings that finally determine the right or status of the party. Case law shows that for an attorney fee order entered in a case involving a trust to be appealable under that rule, two requirements have to be met. First, there must be significant court involvement with respect to the administration of the trust such that the proceeding is similar to the comprehensive proceedings of a state administration and second, the attorney fees requested must have been, must have benefited the trust and neither of those requirements is met here. This case, the crux of this litigation dealt with a declaratory judgment action, not the administration of the trust. The trust was a privately administered trust administered by a trustee that was appointed by the settler, not the court, and there was very little involvement with respect to the court as to administration. Additionally, the attorney fees that were requested that we're talking about right now didn't relate to administration of the trust and that they weren't fees that benefited the trust. They were fees that benefited the beneficiaries because they were the beneficiaries' personal attorneys, not the trust attorneys. Thank you. Are you done? Yes. Thank you. I have a question or two. Based upon what you just said, why was the petition for fees timely filed if supposedly the other matters had nothing to do with the declaratory judgment as you've suggested and your argument immediately seems to be in conflict with itself? You claim that the petition for fees were timely filed, but it seemed like at the time it was filed, as you say, there was ministerial acts or there were issues that didn't relate at all to the assessment of fees. Well, the fee petition related to the distribution of the trust assets because it sought to have fees assessed against plaintiff's share of the islet. But for purposes of Rule 304B1, the question under that rule is whether the fees benefited the trust. And perhaps I did not speak, perhaps I misspoke or didn't speak clearly, but it's whether the fees benefited the trust. And usually that's looking at were the fees incurred because the attorney was representing the trust. And that's not the case here. So although while, yes, the fees were related to distribution of the trust proceeds, they didn't benefit the trust because we're seeking fees for the individual beneficiaries and not the trust itself. And that's why Rule 304B1 does not apply, but the petition was still timely filed. Thank you. I have no further questions. Does the panel have any other questions? I do not. I do not. Thank you. Thank you, ma'am. Mr. Shebar, you may continue. Thank you. A couple of points in response. Going back to Ms. McKillop's argument with respect to our position that distributions prior to the date of death should not be charged against Ms. Davis's share for calculating the trust proceed distribution. Ms. McKillop said I did not raise this at all before the trial court. And that is, of course, not true. I did raise it, and it's in our brief. It's quoted at the hearing. As I said, the judge had articulated her ruling and at that point, I objected and said, this goes contrary to your own statement or your own determination that what's relevant or distributions or the relevant timeframe is the date of death and thereafter. So I did raise it before the trial court. And I should clarify that it's not my contention that phase two are simply supplemental proceedings as one would ordinarily see as execution on a judgment. This is not a proceeding where we do asset discovery and begin to collect and levy on assets. It's not a supplemental proceeding. It clearly was a separate phase where certain issues relating to issues of accounting, not the issues as to which trust would be the operative instrument. So I'm not trying to suggest that this was just a supplemental proceeding. Ms. Schwartz argues that the fact that plaintiffs share what the plaintiff's share of the IOLIT proceeds was going to be is somehow the fact that that wasn't fully determined yet precluded them from filing a petition for attorney's fees. That's just not the case. That's an after the fact justification for a late filing. It turned out that the plaintiff got zero. Does that mean that they shouldn't have filed? I mean, it's not relevant. It's hard for me to believe that they would have said, you know, plaintiff's not going to get anything anyway. Let's not even bother filing a petition for attorney's fees. I don't think that that's a reason that is anything more than an after the fact attempt to save a late fee petition. This argument that Ms. Schwartz advances that somehow the totality of plaintiff's conduct is a basis for all of these fees, these 250 some odd thousand dollars in fees. That's a made up argument that has absolutely no support in case law or any else. That's just an attempt, again, an after the fact attempt to resurrect what they know to be a defeated late claim. There's no unbounded discretion on the part of the court to simply say, I've observed counsel on plaintiffs and I think that we're going to stick it to them because we don't like the way they conducted themselves. Absolutely not. This totality of the circumstances doesn't exist. If there are fees to be awarded because a claim was without foundation, you know, there is a standard. Even the case they cite, their main estate trust case for, you know, that they say supports the award of fees against a portion of the trust, says that the standard is vexatious, groundless vexatious or for an improper purpose. It's not a totality of circumstances. That's not a basis for awarding fees and their fees are clearly based on groundlessness. So to say that, well, it's all good because, you know, the judge thought we deserve to be punished anyway. So that just should not be permitted to be advanced as a meritorious argument. The argument that the August 15th, 2019 order is non-final, again, because this accounting, this October 15th accounting ministerial order, which by the way, self-servingly defendants themselves inserted the language, you know, this is a final appealable order, which again, doesn't really mean anything. It's just also incorrect. How would the trustee proceed to distribute the assets as it was directed to do under the August 15th order if more proceedings were required? They weren't required. There was a full map of how the proceeds were to be distributed. Counselor, your time is up. Would you please close? Yes. Your Honor, I feel like I have covered everything. I think the main point I want to make is the Supreme Court has spoken on this issue and there's not an unlimited amount of time, even if there is a second phase relating to different issues with the same parties. There is not an unlimited amount of time as long as a party is in the case, as check defendants would have it, for them to assert a claim for attorney's fees. That may have happened. I mean, if this is the rule, we could have a proceeding years ago that suddenly, because we had protracted accounting proceedings, which could go on for years. Counsel, you're not closing. You're extending your argument. I apologize. Okay. The point is that the Supreme Court has spoken that the issue, once the court loses jurisdiction over the issue, which occurs 30 days after a final judgment, there are no more petitions to be heard based on attorney's fees arising out of that issue. Thank you. Thank you. Justice Hudson, do you have any questions? Just a quick question. Mr. Shibar, with regard to your argument that you timely objected to the petition for approval and the plan of distribution, would you acknowledge that the matter was presented on June 17th, 2019, the appellant was given until July 15th to file a response. The case was then continued about another month for hearing, and you had never filed any written response or requested additional time until the date for the hearing. Is that correct? I do acknowledge that, Your Honor. Okay. Thank you. Katherine or Justice Enoff, do you have any questions? No, I do not. Okay. I don't have any questions either. Thank you. The oral argument is completed. We will render a decision in due course, and I declare the proceedings closed. Thank you. Thank you.